# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

EUDE RIVERA,

      Plaintiff,

v.                              Case No.  8:19-cv-2337-T-60MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

      Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying his application for a period of disability and disability insurance

benefits ("DIB").  In his February 22, 2016 DIB application, Plaintiff alleged that

he became disabled on December 31, 2010, but subsequently amended his

alleged onset date to April 1, 2015.  (Tr. 19, 199-202.)  On September 4, 2018,

after the Agency denied Plaintiff's DIB application, a video hearing was held

before Administrative Law Judge ("ALJ") Matthew G. Levin at which Plaintiff was

_____

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed.R.Civ.P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

represented by counsel.[2]  (Tr. 38-76.)  On September 28, 2018, ALJ Levin found Plaintiff not disabled from April 1, 2015 through the date of the decision.[3]  (Tr. 19-32.)  Plaintiff is appealing the Commissioner's final decision that he was not disabled during the relevant time period.  Plaintiff has exhausted his available administrative remedies and the case is properly before the Court.  (Tr. 1-3.)  Based on a review of the record, the briefs, and the applicable law, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED and REMANDED**.

## I.    Standard

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a

---

[2] At the hearing, Plaintiff amended his Disability Onset Date from December 31, 2010 to April 1, 2015.  (Tr. 19.)

[3] Plaintiff had to establish disability on or before June 30, 2020, his date last insured, in order to be entitled to a period of disability and DIB.  (Tr. 20.)

contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

Plaintiff raises two issues on appeal.  First, Plaintiff argues that the ALJ erred in determining that his anemia was not a severe impairment at step two of the sequential evaluation process,[4] and that this error was not harmless because the ALJ failed to consider his symptom of fatigue from anemia in assessing Plaintiff's residual functional capacity ("RFC").  (Doc. 16 at 2-7.)  Second, Plaintiff argues that the ALJ erred by failing to consider the "effects of the symptoms of fatigue in the RFC" and that the "reasons articulated by the ALJ for not finding greater [RFC] limitations are not supported by substantial evidence."  (*Id.* at 8-13.)  Defendant counters that substantial evidence supports the ALJ's finding that Plaintiff's anemia was a non-severe impairment and that the ALJ considered "medical and other evidence regarding the nature, severity, and limiting effects of

---

[4] The Commissioner employs a five-step process in determining disability.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

various non-severe impairments, including anemia," in assessing Plaintiff's RFC. (Doc. 18 at 5-8.)  Defendant also contends that the ALJ's evaluation of Plaintiff's subjective complaints regarding his physical impairments and symptoms of fatigue are supported by substantial evidence.  (*Id.* at 8-13.)  The undersigned agrees with Plaintiff on the second issue, and, therefore, does not address the first issue.

### A.   Standard for Evaluating Opinion Evidence and Subjective Symptoms

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3).  With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and

extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)-(6).  "However, the ALJ is not required to explicitly address each of those factors.  Rather, the ALJ must provide 'good cause' for rejecting a treating physician's medical opinions."  *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam), 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008).  Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding."  *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'"  *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* SSR 96-6p (stating that the ALJ must treat the findings of State

5

agency medical consultants as expert opinion evidence of non-examining sources).  While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision.  SSR 96-6p.

When a claimant seeks to establish disability through his own testimony of pain or other subjective symptoms, the Eleventh Circuit's three-part "pain standard" applies.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).  "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so."  *Id.*

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that his pain is disabling through objective medical evidence from an acceptable medical source that shows a medical impairment that could reasonably be expected to produce the pain or other symptoms, pursuant to 20 C.F.R. § 404.1529(a), "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in

deciding the issue of disability," *Foote*, 67 F.3d at 1561.  *See also* SSR 16-3p[5]

(stating that after the ALJ finds a medically determinable impairment exists, the

ALJ must analyze "the intensity, persistence, and limiting effects of the

individual's symptoms" to determine "the extent to which an individual's

symptoms limit his or her ability to perform work-related activities").

As stated in SSR 16-3p:

In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.
. . .
In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent."  It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.[6]  The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and

---

[5] SSR 16-3p rescinded and superseded SSR 96-7p, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p.

[6] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures (other than treatment) used to relieve the pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

. . .

In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation.  The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person.  Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]

SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed" will also be considered "when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities."  *Id.*  "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the adjudicator] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."  *Id.*  However, the adjudicator "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  *Id.*  In considering

an individual's treatment history, the adjudicator may consider, *inter alia*, one or more of the following:

- That the individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her stressors;
- That the individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau;
- That the individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms;
- That the individual may not be able to afford treatment and may not have access to free or low-cost medical services;
- That a medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual;
- That due to various limitations (such as language or mental limitations), the individual may not understand the appropriate treatment for or the need for consistent treatment.

*Id.*

### B.    The ALJ's Decision

At step one of the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 1, 2015.  (Tr. 22.)  At step two, the ALJ found Plaintiff had the following severe impairments: ischemic heart disease, hypertension, diabetes mellitus with peripheral neuropathy, and obesity.[7]  (Tr. 22.)  At step three, the

---

[7] The ALJ also found that "while [Plaintiff] allege[d] limitation[s] due to [] anemia and arthritis in his left wrist (Exhibit 18E-1 & 2 and Testimony), the record fail[ed] to reveal evidence that either of these impairments [had] resulted in any significant functional limitation[s]" and, thus, found them to be non-severe.  (Tr. 23.)  The ALJ explained, *inter alia*, that the medical record revealed that Plaintiff's anemia was treated

ALJ found that, through the date of the decision, Plaintiff did not have an impairment or combination of impairments that met or medically equaled "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."  (Tr. 24.)  The ALJ also determined that Plaintiff had the RFC "to perform light work as defined in 20 [C.F.R.] 404.1567(b),"[8] but with the following limitations: "[Plaintiff] is able to only occasionally climb ladders, ropes and scaffolds and to frequently climb stairs and ramps.  He is able to frequently balance, stoop, kneel, crouch, and/or crawl."  (Tr. 25.)   In making this RFC determination, the ALJ stated that he "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 [C.F.R.] 404.1529 and SSR 16-3p" as well as

---

with medication, including B12 injections, "with no evidence of significant resultant functional limitations (Exhibits 1F-2 and 21F-1)."  (Tr. 24.)  The ALJ noted that Plaintiff's non-severe impairments "were taken into consideration, along with his 'severe' impairments, upon assessing his residual functional capacity . . . ."  (Tr. 24.)

> [8] Light work is defined as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

the "opinion evidence in accordance with the requirements of 20 C.F.R.

404.1527." (Tr. 25.) The ALJ found that Plaintiff's medically determinable

impairments could reasonably be expected to cause the alleged symptoms, but

that Plaintiff's "statements concerning the intensity, persistence and limiting

effects of the[] symptoms [were] not entirely consistent with the medical evidence

and other evidence in the record." (Tr. 26.)

The ALJ summarized Plaintiff's alleged symptoms as follows:

The claimant alleges an inability to work primarily due to ongoing
cardiac-related issues s/p [status post] a myocardial infarction and
by-pass surgery as well as symptoms of neuropathy related to
diabetes mellitus, which limits his ability to perform physical activity.
The claimant alleges that he experiences shortness of breath and
fatigue with almost any physical exertion. At [the] hearing, he
report[ed] that, as a result of his ongoing symptoms, he [was] able to
lift no greater than 5-10 pounds and [was] to stand and/or walk for
only about 15 minutes at a time (Testimony). He also allege[d] that
activities such as kneeling, squatting and/or climbing will cause him
to become lightheaded. The claimant allege[d] that he also
experience[d] swelling in his extremities, related to heat and
humidity, which further limit[ed] his ability to function. In addition, he
report[ed] that, due to ongoing symptoms of diabetic neuropathy
(pain and numbness/tingling) experienced in his hands, he [was]
limited in his ability to grasp and/or to hold on to objects, while as a
result of similar symptoms, experienced in his feet, he [was] limited
in his ability to stand and/or walk. The claimant allege[d] that his
ongoing symptoms of neuropathic pain as well as shortness of
breath disturb[ed] his sleep, resulting in significant daytime fatigue.
At [the] hearing, the claimant testified that he [was] only able to
sleep a few hours per night and that, as a result, he require[d] daily
naps (15 minutes/3x/day). In addition, as a result of his ongoing
symptoms, he also allege[d] experiencing difficulties maintaining
focus and concentration. He report[ed] frequent worry and that he
[became] agitated very quickly which cause[d] his chest to tighten up
when this happen[ed]. The claimant allege[d] that, as a result of his
ongoing symptoms, he [was] significantly limited in his ability to
perform activities of daily living.

(*Id.*)  The ALJ recognized that Plaintiff had a "combination of medically determinable impairments with ongoing symptoms, which result[ed] in significant functional limitations, limiting him to the performance of less than a full range of light exertion work."  (*Id.*)  However, the ALJ found that the record failed "to reveal evidence of medically documented objective findings, test results, and/or a treatment history that [were] consistent with the full alleged severity of his symptoms and limitations and/or his alleged inability to perform any sustained work activity."  (*Id.*)

In making these findings, the ALJ pointed to Plaintiff's cardiac-related medical history and improvement as follows:

> While the record reveal[ed] . . . that the claimant ha[d] an extended history of cardiac-related issues, having suffered a myocardial infarction in 2010 and having undergone bypass surgery (Exhibit 17F), and that, as a result if his cardiac impairment, he was found to have been disabled from 2010 to January 2015, his records reveal[ed] that, as of April 2015, his condition had improved and stabilized.

(*Id.*)  The ALJ pointed to records from Plaintiff's treating cardiologist, Dr. Saurabh Chokshi, noting that as of March 2015, Plaintiff reported ongoing fatigue, but also that his fatigue had improved since "being started on B12 shots."  (*Id.*)  The ALJ noted that "[a]s of said date, while the claimant continue[d] to report some dyspnea on heavy exertion, the claimant [was] otherwise noted to report experiencing no chest pain or discomfort and no palpitations."  (*Id.*)  The ALJ pointed to Dr. Chokshi's notes indicating that "a nuclear test, completed as of

December 2014, show[ed] no ischemia, while an echocardiogram show[ed] an LVEF[9] of 45%, a finding which represent[ed] a significant improvement over earlier reported findings of an LVEF of only 25-30% noted as of January 2012 (Exhibit 1F-4)." (Tr. 26-27.) The ALJ also noted that Plaintiff's records reflected "an ongoing course of out-patient treatment/monitoring of his cardiac condition by Dr. Chokshi" and that:

> While claimant [was] noted to continue to report [some] [ongoing] symptoms of fatigue and shortness of breath on heavy exertion, he [was] repeatedly encouraged to exercise on a regular basis. While noting, as of July 2015, that he remain[ed] functionally very limited and not able to do "heavy activities" Dr. Chokshi state[d] that the claimant [was] encouraged to do more physical exercise (Exhibit 1F-10). The claimant [was] noted to continue to be seen by Dr. Chokshi for routine, six-month follow-up visits with no evidence of any required emergency room visits and/or in-patient hospitalizations due to cardiac-related issues. At each visit, he [was] repeatedly encouraged by Dr. Chokshi to become more physically active. As of March 2018, Dr. Chokshi note[d] that claimant's last stress test revealed no ischemia and a stable echo LVEF of 46% (3/2017; Exhibit 17F-1). As of said date, he [was] once again encouraged to become more active, while being scheduled for another six-month follow-up visit (Exhibit 17F-5).

(Tr. 27.)

With respect to Plaintiff's hypertension and diabetes mellitus, the ALJ found that, although Plaintiff continued to receive ongoing treatment and

---

[9] LVEF (left ventricular ejection fraction) readings measure the percentage of blood leaving the heart every time it contracts. *See* https://www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058256#:~:text=It%20pumps%20oxygen-rich%20blood,is%20usually%20considered%20"borderline." (last visited June 25, 2020). "The ejection fraction is usually measured only in the left ventricle (LV). The left ventricle is the heart's main pumping chamber. It pumps oxygen-rich blood up into the upward (ascending) aorta to the rest of the body." (*Id.*) An LVEF "of 50 percent or lower is considered reduced." (*Id.*)

monitoring of these conditions, the "record fail[ed] to reveal evidence of any associated symptoms related to either of these impairments that would warrant further reduction of his [RFC] for a limited range of light exertion work."  (*Id.*)  In making these findings, the ALJ pointed to medical records from Plaintiff's primary care provider noting that, as of October 2017, Plaintiff's hypertension was controlled.  (*Id.*)  Similarly, the ALJ pointed to records from Plaintiff's cardiologist indicating that, as of March 2018, Plaintiff's benign essential hypertension was controlled at home.  (*Id.*)  The ALJ noted that Plaintiff's diabetes mellitus was also reported to be controlled on Metformin and that there was no evidence "of any emergency room visits and/or required hospitalizations related to the claimant's diabetes and/or his hypertension."[10]  (*Id.*)  With respect to Plaintiff's allegations that pitting edema limited his ability to function, the ALJ found that the medical record dating back to 2015 "reveal[ed] evidence of some edema noted occasionally" but that he was "generally found to have no edema."  (Tr. 28.) Although Plaintiff alleged reduced cognition and difficulties maintaining focus and concentration due to his ongoing symptoms of pain and fatigue, the ALJ found

---

[10] As to Plaintiff's symptoms of peripheral neuropathy related to diabetes, the ALJ found that while Plaintiff reported, as of July 2015, "symptoms of numbness/tingling in his hands and feet, a review of his records reveal[ed] that these reports [were] not made consistently throughout his records [and] with few objective findings noted upon examination."  (Tr. 27.)  The ALJ noted, *inter alia*, that a neurological evaluation from early 2017 revealed that Plaintiff reported "that the paresthesias in his feet [were] not bothersome enough to even warrant any treatment (Exhibit 8F-1), while, upon undergoing examination as of October 2017, he [was] noted to deny any neuropathy symptoms (Exhibit 14F-7)."  (*Id.*)

that "a review of his treatment records fail[ed] to reveal evidence of medically documented findings consistent with such alleged deficits."  (*Id.*)

Moreover, the ALJ also found that the record "reveal[ed] evidence of an ongoing level of activity that [was] found to be inconsistent with his alleged inability to perform any sustained work."  (*Id.*)  In making this finding, the ALJ pointed to Plaintiff's March 2016 Questionnaire in which he "acknowledge[d] that his impairments [] had no impact on his ability to cook and/or prepare meals" and "indicate[d] an ongoing ability to complete some 'light duties' with regard to house cleaning and laundry."  (Tr. 28-29.)  The ALJ noted that, as of November 2017, Plaintiff was exercising regularly three times per week for 20 minutes.  (Tr. 29.)  According to the ALJ, even though Dr. Chokshi noted Plaintiff was unable to perform "heavy activities," Plaintiff had been "repeatedly encouraged to increase his level of physical activity by both his treating cardiologist and his primary care physician."  (*Id.*)  The ALJ also cited to notes from Dr. Sirchia, encouraging Plaintiff "to increase his physical activity as tolerated" and to walk or perform cardio 30 minutes per day, and from Dr. Chokshi, stressing the importance of diet and exercise.  (*Id.*)

In making the RFC determination, the ALJ also evaluated, *inter alia*, the medical opinion evidence, according great weight to the July 2016 opinion of the State agency medical consultant, Jack Rothman, M.D., that Plaintiff had the capacity to perform a range of light exertion work activity.  (*Id.*)  The ALJ explained that he accorded great weight to Dr. Rothman's opinion "since his

assessment [was] found to be consistent with the evidence of record as a whole, including medical evidence received subsequent to his review, which fail[ed] to reveal evidence of any significant change in the claimant's medical status[,]" and that Dr. Rothman cited to "specific medical[] findings of record to support his assessment." (*Id.*)

The ALJ then accorded limited weight to the opinion of Plaintiff's primary care provider, Dr. Sirchia, explaining as follows:

> I have given limited weight to opinion evidence offered by the claimant's primary care provider, [Dr. Sirchia], who, upon completing a [RFC] Questionnaire in September 2016, opine[d] that the claimant ha[d] the capacity to perform a reduced range of sedentary work with a required need for 3-6 absences a month (Exhibit 7F-3). Upon completing this Questionnaire, Dr. Sirchia fail[ed] to note specific objective findings to support the degree of functional limitation assessed and/or to indicate the basis for the assessed number of monthly absences. A review of the claimant's treatment records compiled during the period under review since April 1, 2015, including records obtained from Dr. Sirchia[,] . . . fail[ed] to reveal evidence of medically documented objective findings and/or a treatment history consistent with the degree of functional limitations assessed. Rather, as noted above, the claimant [was] repeatedly encouraged by Dr. Sirchia and his cardiologist to continue to increase his level of physical activity.

(*Id.*) The ALJ concluded that his RFC assessment was supported by the opinion evidence of the State agency medical consultant, Dr. Rothman, "whose assessment that the claimant [was] capable of performing a range of light exertion work activity [was] found to be consistent with the evidence of record as a whole." (*Id.*)

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (Tr. 30.)  At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform.  (Tr. 30-31.)  In making this determination, and in assessing "the extent to which these limitations erode[d] the unskilled light occupational base," the ALJ relied on the testimony of a vocational expert ("VE") who testified that Plaintiff could have performed the jobs of garment sorter, injection molding machine operator, and ticket taker/seller.  (Tr. 31.)  As noted in the ALJ's decision, all of these representative occupations were classified as light exertion work with an SVP of 2.  (*Id.*)  Thus, the ALJ concluded that Plaintiff was not disabled from April 1, 2015 through the date of the decision.  (*Id.*)

### C.   Analysis

Plaintiff asserts that the reasons provided by the ALJ for discounting his subjective complaints are not supported by substantial evidence. First, Plaintiff argues that the ALJ failed to consider Plaintiff's dilated cardiomyopathy and anemia and the fatigue these conditions would cause, and instead focused on the "lack of chest pain and an ejection fraction of 45% or 46%."  (Doc. 16 at 8.) Plaintiff argues that he did not need to experience "chest pain to be fatigued and tired" and that his ejection fraction could "be slightly below normal" but he could "still have fatigue from the cardiomyopathy."  (*Id.* at 8-9.)  Plaintiff also contends that "[i]n addition to his anemia and cardiovascular disease, his diabetes with

peripheral neuropathy provide[d] a medical basis for his limitations on standing and walking." (*Id.* at 9-10.)

Plaintiff also asserts that the second reason provided by the ALJ for not limiting the RFC further, namely that Plaintiff's "'ongoing level of activity was inconsistent with his alleged inability to perform any sustained work,'" was not supported by substantial evidence. (*Id.* at 11 (citing Tr. 28).)  Specifically, Plaintiff argues that the ALJ erred by considering only one of Plaintiff's Questionnaires from March 2016,[11] describing only daily activities of short duration, and not the entire record, and that the ALJ's findings were "contrary to that 'ongoing record.'" (*Id.* at 12.)  Plaintiff further argues that the ALJ erred in relying on Plaintiff's statements that "he exercised regularly 3 times a week for 20 minutes" to deny benefits as this did not establish an ability to perform work activities on a regular and continuing basis. (*Id.* at 12-13.)  According to Plaintiff, "[w]hen taken in connection with the evidence regarding standing and walking,

---

[11] Plaintiff notes that the ALJ relied on a March 2016 Questionnaire he completed, in which he "said there was no effect on [his] ability to cook; he could complete some light duties regarding house cleaning and laundry; and he could not lift more than 20 pounds." (Doc. 16 at 11.)  Plaintiff argues that this Questionnaire was "not evidence of 'ongoing levels of activity' when there [were] three other Questionnaires completed by [Plaintiff], all of which show[ed] more significant limitations." (*Id.*)  For example, "[i]n a Cardiac Questionnaire filled out the same day in March 2016, Mr. Rivera stated he could walk slowly for about ½ a block and then had to stop because of fatigue and shortness of breath." (*Id.* (citing Tr. 255).)  Plaintiff claims that he further stated that "he could walk rapidly only about 5 minutes and then had to stop because of fatigue and shortness of breath." (*Id.* (citing 256).)  In this Questionnaire, Plaintiff also asserted that he "was limited to lifting and carrying 5 to 10 pounds because of fatigue and chest pains" and "could stand no more than a half hour and then his feet would swell and he would feel tired." (*Id.*)

that [was] the maximum he was able to do, and after that much exercise, he needed to rest."  (*Id.* at 13 (citing Tr. 255, 276).)

Lastly, Plaintiff argues that the ALJ erred in relying on "the fact that his doctors regularly encouraged him to exercise more" in assessing his RFC.  (*Id.*) Plaintiff notes that his doctors recommended that Plaintiff increase his exercise to "30 minutes every day as tolerated," not that he "perform work activities 8 hours a day for 5 days a week," and even if he did exercise 30 minutes per day every day, this was not indicative of his ability to work.  (*Id.*)  In order to be a basis for denial of benefits, Plaintiff argues, "the prescribed treatment must be expected to restore the ability to work" and "[t]he mere possibility that treatment would improve the condition enough to return to work is insufficient to support denial of benefits."  (*Id.*)

Defendant counters that the ALJ's determination that Plaintiff's physical impairments were limiting, but not as limiting as Plaintiff alleges, was supported by the following substantial evidence:

> treating cardiologist Saurabh Chokshi, M.D.'s March 2015 note showing Plaintiff reported some ongoing fatigue, but his fatigue improved since being started on B12 shots (Tr. 26, 310); Dr. Chokshi's documentation of a significantly improved left ventricle ejections fraction (LVFE) rate in March 2015, as compared to January 2012 (Tr. 26-27, 312-13); Dr. Choksi's [sic] repeated advice that Plaintiff exercise, notwithstanding his ongoing complaints of symptoms including fatigue (Tr. 27, 30, 318, 648, 709); the few physical or mental abnormalities noted on examination, despite his complaints of physical and mental symptoms (Tr. 27-28, 317, 322, 386-87, 441-43, 459-60, 470, 486-88, 620-21, 641-42, 646-47, 652-54, 707-08, 728-29, 748-49); the routine follow-up visits scheduled by Dr. Choksi [sic], and the lack of emergency room visits or in-

patient hospitalizations due to cardiac issues (Tr. 27, 318, 456, 461, 709); the lack of any evidence of any reports of significant alleged cognitive issues and/or referrals made for any further assessment of any mental issues (Tr. 28); documentation [that] his diabetes and hypertension were controlled with treatments such as medication (Tr. 27, 655, 709); Plaintiff's ongoing level of activity, which included exercise and some housework and was inconsistent with his alleged inability to perform any sustained work (Tr. 28-29, 244, 657); and the opinion of State agency medical consultant Jack Rothman, M.D., that Plaintiff had the ability to perform a range of light work (Tr. 29, 93-95).

(Doc. 18 at 10-11.)

Defendant also counters that the ALJ did not err in relying in part on Plaintiff's "activities of daily living in evaluating his allegations of disabling impairments." (*Id.* at 11.)  With respect to Plaintiff's doctors' advice that he exercise more, Defendant argues that "agency regulations specifically provide that the ALJ may consider statements by medical sources in evaluating a claimant's subjective complaints." (*Id.*)  Defendant also argues that the VE's testimony that Plaintiff had transferable skills that would allow him to perform sedentary work as an auto claims clerk undercuts his claim that the ALJ committed reversible error.  (*Id.* at 12.)

The Court agrees with Plaintiff that the ALJ erred in his evaluation of Plaintiff's subjective complaints in determining the RFC.  Although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the

20

record." (Tr. 26.) In discrediting Plaintiff's subjective complaints and formulating the RFC, the ALJ found "a lack of medically documented objective findings, test results, and/or treatment history consistent with the alleged severity of his impairments and limitations," and that Plaintiff's "records also further reveal[ed] evidence of an ongoing level of activity that [was] found to be inconsistent with his alleged inability to perform any sustained work." (Tr. 28.) The undersigned finds that these conclusions are not supported by substantial evidence.

The ALJ's reasons for discounting Plaintiff's complaints and the limiting effects of his fatigue in assessing the RFC are not supported by substantial evidence. First, to the extent the ALJ discounted Plaintiff's fatigue because his condition had purportedly improved as of March 2015 when he started B12 shots, this reason is not supported by substantial evidence as the record shows that, even after March 2015, Plaintiff consistently complained of significant fatigue. (*See, e.g.*, Tr. 315-16 (noting that on July 13, 2015, Plaintiff reported more fatigue, feeling "tired all the time," and as having "no energy to wake up in the morning"); Tr. 320 (indicating that on January 11, 2016, Plaintiff reported "feeling sluggish and tired all the time"); Tr. 366 (noting, on February 18, 2016, that Plaintiff had been complaining of fatigue and shortness of breath); Tr. 377-81 (indicating, on October 28, 2015, that Plaintiff complained of feeling tired for one month, had a history of anemia, and that his assessment was severe fatigue and chronic anemia); Tr. 424 (noting, on March 30, 2016, that Plaintiff's macrocytic anemia had worsened); Tr. 452 (indicating that on March 7, 2016, Plaintiff

reported "feeling sluggish and tired all the time"); Tr. 458-60 (noting, on September 12, 2016, that Plaintiff complained of feeling sluggish and tired all the time and that his anemia was being treated with iron infusions and B12 injections); Tr. 522 (noting that on April 3, 2017 Plaintiff reported feeling sluggish and tired all the time); Tr. 582 (noting that on April 28, 2017 Dr. Sirchia assessed Plaintiff with hypochromic/microcytic anemia).)

Moreover, while B12 injections were noted to have temporarily helped treat Plaintiff's fatigue, his symptoms persisted, and Plaintiff was ultimately referred to a specialist.  (*See, e.g.*, Tr. 648 (noting that on October 30, 2017, Plaintiff was referred to Hematology for "iron deficiency anemias"); Tr. 704 (noting that on January 17, 2018, Plaintiff was seen by his hematologist, George Demarkar, M.D., for a follow-up of his "iron deficiency related to gastric bypass surgery" and that there had been "improvement in his iron deficiency," but he needed "one more treatment to be in the normal range"); Tr. 745 (noting, on April 30, 2018, that Plaintiff "was told that gastric bypass [surgery] [was] the reason for his anemia," iron supplements did not help improve his anemia, and that he was receiving iron infusions).)

Plaintiff also argues that the ALJ's reliance on improved LVEF readings in discounting his symptom of fatigue was misplaced as his cardiomyopathy also caused his fatigue.  (Doc. 16 at 10-11.)  The record shows that Plaintiff was

diagnosed with cardiomyopathy[12] and this condition was routinely listed as an active problem, along with shortness of breath on exertion and fatigue.  (*See* Tr. 310, 315, 320, 410, 412, 515, 522, 534, 539, 546, 551, 556, 618, 709.)  The undersigned agrees with Plaintiff that these conditions and symptoms were supported by objective evidence.[13]  (*See, e.g.*, Tr. 410-413 (echocardiogram report dated March 3, 2016 indicating, *inter alia*, that Plaintiff was diagnosed with ischemic cardiomyopathy and shortness of breath, that Plaintiff's LV chamber was moderately dilated, and that his ejection fraction was abnormal at 46%).)  These records, as well as other medical evidence of record, tend to support Plaintiff's subjective complaints.  *See Meek v. Astrue*, No. 3:08-cv-317-J-HTS, 2008 WL 4328227, at *1 (M.D. Fla. Sept. 17, 2008) ("Although an ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision . . . .  Rather, the judge must explain why significant probative evidence has been rejected.")  (internal citations omitted); *Lord v. Apfel*, 114 F. Supp. 2d 3, 13 (D.N.H. 2000) (stating that although the

---

[12] "Cardiomyopathy is a disease of the heart muscle that makes it harder for [the] heart to pump blood to the rest of [the] body.  Cardiomyopathy can lead to heart failure. The main types of cardiomyopathy include dilated, hypertrophic and restrictive cardiomyopathy."  *See* https://www.mayoclinic.org/diseases-conditions/cardiomyopathy/ /symptoms-causes/syc20370709#:~text=Cardiomyopathy%20(kahr%2Ddee%2Do, Dilated%2C%20hypertrophic%20and%20restrictive%20cardiopyopathy. (last visited June 25, 2020).  Symptoms of cardiomyopathy include breathlessness with exertion and fatigue.  (*Id.*)

[13] Of note, on April 3, 2017, Dr. Chokshi reported that Plaintiff's LVEF was 34%. (*See* Tr. 522; *see also* Tr. 526 ("Discussed stress te[st] resu[]lts, in view of LVEF=34% will persue [sic] echocardiography").)

Commissioner is not required to refer to every piece of evidence in his decision, the Commissioner may not ignore relevant evidence, particularly when it supports the claimant's position).

In support of his decision, the ALJ also relied on the July 2016 opinion of non-examining State agency consultant, Dr. Rothman, opining that Plaintiff was capable of performing light exertional work.[14]  (*Id.*)  In giving great weight to this opinion, the ALJ noted that Dr. Rothman's assessment was "found to be consistent with the evidence of record as a whole, including medical evidence received *subsequent to* his review, which fail[ed] to reveal evidence of any significant change in the claimant's medical status."  (Tr. 29 (emphasis added).)  However, as discussed *supra*, the medical evidence after July 2016, the date of Dr. Rothman's opinion, shows that Plaintiff's anemia and fatigue did not respond to B12 shots or iron supplements, and that Plaintiff had to be referred to a specialist for further evaluation and treatment.  Therefore, the ALJ's findings are further undermined by his reliance on Dr. Rothman's opinion in rejecting Plaintiff's complaints of fatigue as that opinion did not consider the medical evidence after July 2016.[15]

---

[14] In contrast, the ALJ gave limited weight to the opinion of Dr. Sirchia, Plaintiff's treating physician, that Plaintiff was severely limited due, in part, to his cardiomyopathy and symptoms of fatigue and limiting Plaintiff to a reduced range of sedentary work. (*See* Tr. 29, 407-08, 462-65.)

[15] Also of note, in discounting Plaintiff's complaints of fatigue, Dr. Rothman cited to "Medication Treatment" when assessing "the consistency of [Plaintiff's] statements about [his] symptom related limitations."  (Tr. 92-93.)

Here, the ALJ failed to provide adequate reasons, consistent with and supported by the evidence, for rejecting Plaintiff's testimony regarding the limiting effects of his symptom of fatigue.  The ALJ's failure to provide reasons supported by substantial evidence for discounting Plaintiff's testimony regarding the severity and limiting effects of his fatigue, or how his fatigue symptoms and the limiting effects thereof were inconsistent with the medical evidence, prevents the Court from determining whether the ALJ properly evaluated Plaintiff's symptoms, and thus, his RFC.  *See* SSR 16-3p ("In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'  It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the weight given to the individual's symptoms, *be consistent with and supported by the evidence*, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.") (emphasis added); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  When "an ALJ discredits a claimant's testimony, the ALJ must articulate, explicitly and adequately, reasons for not crediting the testimony."  *Gray v. Comm'r of Soc. Sec.*, No. 8:17-cv-1157-T-JSS, 2018 WL 3805866, at *6 (M.D. Fla. Aug. 10, 2018) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223-24 (11th Cir. 1991)).  "'Implicit in this rule is

the requirement that such articulation of reasons . . . be supported by substantial evidence.'"  *Gray*, 2018 WL 3805866, at *6 (quoting *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987)).

Moreover, the Court notes that it was improper for the ALJ to conclude that Plaintiff's limited participation in certain daily activities, including household chores, was consistent with the ability to perform competitive work.  The performance of limited daily activities is not necessarily inconsistent with allegations of disability.  *See, e.g.*, *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985) (per curiam) (reversing and remanding the case to the Commissioner for lack of substantial evidence to support the finding that the claimant had no severe impairment, even though the claimant testified that she performed housework for herself and her husband, accomplished other light duties in the home, and "was able to read, watch television, embroider, attend church, and drive an automobile short distances"); *White v. Barnhart*, 340 F. Supp. 2d 1283, 1286 (N.D. Ala. 2004) (holding that substantial evidence did not support the decision denying disability benefits, even though the claimant reported that she took care of her own personal hygiene, cooked, did housework with breaks, helped her daughter with homework, visited her mother, socialized with friends sometimes, and, on a good day, drove her husband to and from work, but needed help with grocery shopping, and could sit, stand, or walk for short periods of time).  Instead, the record shows that Plaintiff's activities of daily living were rather limited.

26

Additionally, to the extent the ALJ relied on Plaintiff's statements that he exercised 20 minutes per day, three times per week, or that his doctors encouraged him to increase his exercise to 30 minutes per day, every day, the ALJ failed to explain how this established that Plaintiff could perform sustained work activities.  *See Russ v. Barhhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005) ("However, the existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached.") (citation omitted).

Based on the foregoing, the ALJ's reasons for discounting Plaintiff's subjective complaints of fatigue are not supported by substantial evidence.  In light of this conclusion and the possible change in the RFC assessment, it is unnecessary to address Plaintiff's remaining arguments.  *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam).  However, on remand, the ALJ should be directed to re-consider his findings with respect to Plaintiff's anemia and cardiomyopathy.

Accordingly, it is respectfully **RECOMMENDED** that:

1.     The Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g) with instructions to the ALJ to: (a) re-evaluate Plaintiff's anemia

and cardiomyopathy and reconsider Plaintiff's subjective complaints; (b) re-evaluate Plaintiff's RFC assessment, if necessary; and (c) conduct any further proceedings deemed appropriate.

      2.      The Clerk of Court be directed to enter judgment accordingly, terminate any pending motions, and close the file.

      3.      In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012).  This Court's Order on this Report and Recommendation should not be interpreted as extending the limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

      **DONE and ENTERED** in Jacksonville, Florida, on July 9, 2020.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Thomas P. Barber
United States District Judge

Counsel of Record